Now call up Case No. 20-1429, Kilbourne v. Apple. Mr. McGauguin, please proceed. Thank you, Your Honor, and good morning and may it please the Court. The District Court erred when it construed the general broad claim phrase, reversible elongated member, in Claim 11 to require specific narrow physical features not associated with the language of the claim at issue. Mr. McGauguin? Yes. This is Judge Wallace. On page 29 of the red brief, Apple says, I'm quoting, the District Court correctly found the 795 patent does not describe or enable any way of achieving compatibility with different tailpiece configurations other than by using a reversible elongated member having a different shape opening on each end. Do you agree or disagree with that? No, I would disagree with that because the compatibility with different shaped tailpieces is determined by the end shape of the elongated member. So, for example, if we look in the patent at figure 6C... Counsel. Yes. Okay. It's a yes or no, and apparently you disagree. So can you cite an instance where a reversible elongated member did not have a different shape opening on each end? I can say, Your Honor, that in the patent, it would implicitly have a member that would have the same opening on each end, and the reason for... Go ahead, Your Honor. Why would you reverse it if it had the same one on each end? Well, it could be reversible for ease of assembly, and that these are parts that have to be put together by the user as recited in the method claim, so it does not require specific orientation of the member. It would also allow the part to be used if, for example, one end became worn or one end became blocked in any way. It would also allow for ease of manufacturing at some point, so the reversibility concept, we believe, is distinct from the idea of matching the tailpiece member of the door lock, and for example, in figure 6C of the patent on appendix 042, there are three different standard door lock shapes that are discussed, a half oval, a cross, and basically a slash, and so if one were going to try to have members that would allow this piece to be adapted to different doors, what you'd have to have is at least some members with a cross, with a slash, and with the half oval, and that can be done either by having three pieces, each one with one shape adapted to each tailpiece, or you could have two pieces, one perhaps with two shapes, one on each end, and one that would have no need to have a different shape opening on each end. So, believe the idea of... Yes, sir. Yes. Where in the patent or in the specification, do any of those factors get discussed? The specification discusses the... The wear and tear. Those are not discussed in the specification, Your Honor. Where are they discussed? Anywhere in the record? They were discussed during the oral argument in the claim construction proceeding where the court asked what reasons would you have for reversibility apart from adapting to different tailpiece members, but what I think... Point to anything in the patent history. No, Your Honor. The evidence in the prosecution history was that when the patentee discussed the reversibility feature being adapted to tailpieces of different shapes, it specifically did that in the context of claims that require not only a reversibly elongated member, but a reversibly elongated member having first and second ends, with each end having, in one instance, it says, a different shape, in another instance, it says, a cross and either a half oval or the slash. But all of the discussions of reversibly elongated members having different opening on each end was in the context of a specific claim that not only recited a reversibly elongated member in general, but went on to define that member in more specific terms by saying that it had two ends with each end having either different shapes or the specific shapes were recited. So, the question is, is reversibly elongated member in isolation and as a whole necessarily restricted to one having different shaped opening on each end? And I would say if you look through the patent and the claims of the patent, there's nothing in there that would suggest that that phrase, reversibly elongated member, would require in any way different shape openings on each end. Now, the prosecution history does discuss the claims that have more specific limitations requiring that. And when it talks about the benefit of having the different shapes on each end, it talks about it in the context of claims that specifically have it. So, I think the issue is instead of looking... Yes, Your Honor. Let me take you back to the oral argument you were discussing and the arguments that were made by counsel. Do you have any expert testimony in support of those arguments? What I'm driving at is, is it purely attorney argument? For example, where or ease of use, the ones you mentioned? Gilbert's testimony. Just one moment, Your Honor. It's not pointed to anything specifically in the intrinsic record. And to that extent, it's going to be predominantly attorney. It's going to be attorney argument. But I would say from our perspective, it really goes to do the words reversibly elongated member necessarily imply different shape openings on each end. Now, whether the patent describes a benefit from that or whether it doesn't, the question is, are those terms, if we're looking at the patent and we're looking at the specification, do those three broad words require different shape openings on each end? And if you look in the specification and you look in the claims, you're not going to find anywhere that it says that this has to have different shape openings on each end. In fact, if you look at the claims that are in the issued patent, claims one and eight, they recite not only reversibly elongated member, but they go on to recite more specifically that the reversibly elongated member has first and second ends with inner and outer surfaces where the configurations are adaptable to substantially all tail pieces. That's claim one. Our claim eight says where you have two ends, one with a half shape and one with a cross shape or a rectangular shape. And so regardless of whether the specification describes the benefits or the desired functionality of the reversible member, there's nothing in the specification that would suggest that those otherwise broad terms should be restricted to a reversible elongated member that has the very specific configuration of two different shaped openings on each end. Let me interrupt you for a minute. This is Judge Proust. I just can't get off the claim language myself. And looking at claim 11, the only term there isn't just reversible elongated member. It talks about selecting the end which matches. So language such as selecting and matching implies, does it not, that the ends of the elongated member are different. Otherwise, why would it be necessary to select or match a particular end of the reversible elongated member? I'm not getting it. This is just relying on the claim language, not the specification, not the prosecution history. What is the matching? What would be the matching? I think the matching means that you have to have an end of a tailpiece member that matches an end of the reversible elongated member that matches that particular tailpiece. And because there are three possible shapes, in general, you have to select an end of a reversible elongated member that matches that shape. But that doesn't necessarily imply... ...that it involves ends which have different matching shapes. I would say it does not. And the reason is that several. One is, if you have three adapters where each adapter has an end that is associated with one of the three tailpieces, and you select an adapter or the end of the adapter that you would select the end of a reversible elongated member that matches the tailpiece. Just like if you were to reach into your toolbox and select the end of a screwdriver that matches the particular screw you're trying to turn, be it a Torx, a Phillips, or a flathead. The recitation that you have an end that matches with the tailpiece simply means that that end matches that tailpiece assembly to a particular pre-existing lock. It doesn't mandate that the other end have a different shape. And in fact, if we look at Figure 6C again that shows three shapes, if you were going to have adapters configured to all three locks, you might have a member with different shapes on each end. You might have one member, which would be the third or the oddball shape, which would have the same on each end, but it's not necessarily inherent in the concept of a reversible elongated member that you have different shapes. And again, this court's case in Baldwin v. Siebert that says simply referring to a element doesn't exclude the possibility of having multiple ones would suggest that in a method step of selecting the end of a reversible elongated member that matches the tailpiece, that's not necessarily limited to a step of selecting one member that has different ends, but would in fact encompass the idea of selecting a member from a group of three members that has an end that matches the particular tailpiece at issue. And I would point out what I think is important, and I'm going into rebuttal time, but I want to make this point. I think it's important to note that the idea of Claim 11 not being specific in requiring different shape openings on each end also illuminates the prosecution history. If you look at the arguments that were identified in the district court opinions, they're all arguments made specifically in the context of a claim limitation that recited not only a reversible elongated member, but rather a reversible elongated member that had either different shape openings on each end that met all known locks or substantially all locks or one that actually explicitly recited the shape of the different ends. And that claim language would have been meaningless and unnecessary if the concept of having different shaped openings on each end was an intrinsic and inherent part of a reversible elongated member. Thank you. Well, we have the remainder of your time for rebuttal. Let's hear from the other side. Mr. Hines? Good morning, Your Honors. May it please the Court. The district court's carefully considered construction of reversible elongated member should be affirmed. And this is because the intrinsic evidence uniformly supports the district court's construction of that term, and none of the intrinsic evidence supports patent owner's construction. Let's first talk about the language of Claim 11. I think the language of Claim 11, Your Honors, makes clear that the reversible elongated member must have different shaped openings on each end to accommodate the different shaped tailpieces. It was amended during prosecution to require the steps of determining the cross-sectional shape of the tailpiece member of a pre-existing deadbolt system, and then selecting the end of the reversible elongated member that matches the predetermined tailpiece member. And the step of selecting the end that matches just necessarily requires the ends to have different shaped openings. Otherwise, it would be impossible to select one end versus the other to match the predetermined shape of the tailpiece. Now, if the reversible elongated member has the same shape on each end, then that's as the patent owner contends, you're not really selecting the end which matches the tailpiece shape. So, the only purpose for selecting the end of the reversible elongated member that matches the tailpiece is for accommodating different cross-sectional shapes of the various tailpiece members. And this requires different shaped openings on each end. And this is how the patent owner defined reversible elongated member during prosecution. Now, what we just heard from the patent owner, and this shows up for the first time in the reply brief, they used attempting to rewrite Claim 11 to require just selecting a reversible elongated member that has an end that matches the cross-sectional shape of the tailpiece. But that's not what the claim says. The claim requires selecting the end of the reversible elongated member that matches the predetermined shape of the tailpiece. And this is consistent with the District Court's construction and Apple's construction that the reversible elongated member has to have different shaped openings on each end in order to perform the recited function in the claim that would allow the user to select the end which matches the preexisting tailpiece. We also... But they seem to be arguing now is that the adapters should be construed as part of the end. So, if you have adapters which allow you to modify the end, then you have satisfied the claim language somehow. Yes. If the adapter, if the reversible elongated member has different shaped openings on each end to accommodate different cross-sectional shapes of various tailpiece members, that's how this term was defined. It's consistent with the context of the claim and... I don't think you're understanding what I'm saying. What they are arguing is that the end includes the adapter. Well, the end... The adapter certainly has an end. And the adapter has an end under both parties' construction. So, even under their construction, they say, well, you know, the reversible elongated member means that it can just be used in either direction. But it has to be, even under their construction, you know, adaptable to the tailpiece. So, of course, the reversible elongated member has to have an end. And what I'm saying is that it's clear from the context of all of the intrinsic evidence that these reversible elongated members have to have ends that have different shapes on each end. And that's clear from the definition that was provided during prosecution. It's clear from the claim language of Claim 11. And it's clear from the specification as well. Did I answer your question, Your Honor? Not really, but okay. Well, if there's anything else that you're getting at, I want to make sure I get to your point. Well, in any event, Your Honor... Sorry, go ahead. The point that they're making is that you can get a reversible elongated member by adding adapters to the two ends. And that is covered by the claim language. I think what they're arguing, Your Honor, is essentially this concept of using multiple adapters, multiple adapters that might have the same shape opening on each end, for example. And there's just simply no support whatsoever in the specification for the use of multiple adapters. In fact, the specification is very clear that it recites a universal spline stem, and the universal spline stem accommodates virtually all manufacturer's tailpiece shapes. And we could also look at Claim 1, Your Honor, and Claim 1 recites a reversible elongated member that's adaptable to substantially all tailpiece members. So there, Your Honor, you would have a single reversible elongated member that could be adaptable to all three shapes that are disclosed in the specification. So the patent owner is just simply wrong. And it's just manufacturing the fact that the specification or the claims requires the use of multiple adapters. It's just simply not the case. It's an important point made in the specification that you have a universal spline stem that fits virtually all adapters. And that's also reflected in Claim 1. And I would also point out, Your Honor, that this argument shows up for the very first time in their reply brief. This was not briefed in their opening brief or ever made at the district court below. But most importantly, Your Honor, it's just wrong. I'd also like to talk about, you know, the specification because it also strongly supports the Apple's construction and the district court's construction. The only passage in the specification that refers to an elongated member that can be used in either orientation does so by having different shaped openings on each end to accommodate the different manufacturer's tailpiece. And in fact, the specification says that the purpose of the dual-facing spline stem is so that it can be used with a plurality of standard deadbolt locks. And that's on appendix page 49. It's the 795 patent at column 7, lines 29 through 37. So, the only purpose in the specification for having these elongated members that can be reversed is for accommodating different manufacturer's tailpiece. And Judge Wallach, you asked counsel for Mr. Kilbourn a very good question. You said, well, where, you know, where in the specification do we get these? Well, maybe it doesn't eliminate where on the reversible elongated member and it's nothing in the specification that describes a purpose for reversibility other than to accommodate the different tailpiece shapes of different manufacturers. And his argument at the district court was rejected by the district court because it was just attorney argument. There's simply no record evidence whatsoever to support that purpose for reversibility. It's very clear from the intrinsic evidence that it's to accommodate different tailpiece shapes and it does so and the only basis for doing so or a way to do so is by having different shaped openings on each ends. So, Your Honors, I think the specification then, you know, very strongly supports Apple's construction of reversible elongated member as well. And I would just state very briefly, Your Honor, that I think it's very clear that, you know, again, this was a term that was not included in the original specification or claimed. The patent owner has admitted it does not have a common meaning in the art and when it was added to the claims, the patent owner described what it meant by that term. And all of this evidence is consistent with the fact that reversible elongated member has different shaped openings on each end to accommodate different manufacturers' tailpiece shapes. I would also just state very quickly, Your Honors, that as a separate and independent basis for the district court's claim construction was prosecution history disclaimer. Now, the district court said we didn't need to get there because, you know, my definition is a plain and ordinary meaning in view of the intrinsic evidence. But that is a separate and independent basis for affirming the district court. And I think it's worth noting, Your Honors, that the patent owner doesn't even mention prosecution history disclaimer in its opening brief. It gets to it in its reply brief on page 20 by simply saying, well, we distinguish CORI on grounds that it could be used in either direction. I mean, interestingly, Your Honors, there's not a single citation to the record for that proposition because that's not the case. That's not how they distinguished CORI. There's a mountain of evidence to the contrary that they distinguish it on grounds that it accommodate different tailpiece shapes. So, Your Honors, I would submit that that is a separate and independent basis for affirming the district court's claims construction. And if there are no other questions, that's all I have. Thank you. Mr. Ogham, rebuttal time? Yes, and I'll just make a few points. First, this court's precedent has always been clear that a patentee is entitled to use broad language in the claim and is entitled to the full scope of that language, absent some disavowal or disclaimer. And here, the terms reversibly elongated member are clear, are unambiguous, and in no way require that you have different shaped openings on each end. So, if we look to the language of Claim 11 and suggest that the different openings have to come into play because the claim refers to the step of selecting the end of a reversible elongated member that matches the tailpiece, that language would absolutely apply to someone who selects a reversible elongated member from a group of three that has a end that matches the tailpiece. The requirement that you select an end that matches the tailpiece is necessary to adapt this lock opener to the particular lock. It is in no way necessary to have different shaped openings on each end to fulfill that adaption feature. So, if you look at the language of the claim, it's broad. If you look at the language of Claim 11, there's nothing that implies or requires different shaped openings, and I think it's important to consider Claims 1 and 8 because they show when the patentee wanted to recite different shaped openings on each end, it referred not only to a reversible elongated member, but rather to one that has different shaped openings on each end, and it did it very specifically. So, that from our view speaks volumes as to the inappropriateness of restricting Claim 11 in this way. And as a final point, I'll note that Claim Construction should apply the same way whether you're analyzing the claim for infringement or invalidity. And if you look at how this would be in reverse, if a patent owner tried to argue that a reversible elongated member meant different shaped openings on each end to get around the prior art, I don't think that that type of construction would fly. Thank you for your time. Thank you. We thank both sides, and the case is submitted. That concludes our proceeding for this morning. Thank you. Thank you, Your Honors. The Honorable Court is adjourned until tomorrow morning at 10 a.m.